UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
DES LAURIERS MUNICIPAL          :
SOLUTIONS, INC.,
                                :
    Plaintiff,                  Civil Action No. 3:06-cv-0919 (FLW)
                                :
    v.
                                :
FRANKLIN TOWNSHIP;
MICHAEL J. GALLAGHER,           :
                                            OPINION
    Defendants.                 :
_____

**WOLFSON, United States District Judge**:

    Presently before the Court is a Motion for Summary Judgment brought by Defendants Township of Franklin ("Township") and Michael Gallagher (collectively "Defendants") to dismiss Plaintiff Des Lauriers Municipal Solutions, Inc.'s ("Plaintiff") Complaint. Plaintiff alleges that Defendants are in breach of contract, or alternatively, have been unjustly enriched by Plaintiff's services when the Township retained and used Plaintiff's software licenses without compensating Plaintiff. Defendants deny Plaintiff's allegations and contend that (1) an amendment to the agreement between the parties was not properly executed and (2) Defendants never used the software licenses. For the reasons that follow, Defendants' Motion for Summary Judgment is granted with respect to Plaintiff's contract claims. However, the Court does not dismiss Plaintiff's claim for unjust enrichment.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    Plaintiff is a corporation organized and operating in Delaware, which specializes in the design and sale of town management software. Pl.'s Compl. ¶1. The Township is a

1

municipal corporation under the laws of the State of New Jersey with offices located in Somerset, New Jersey.  Id. ¶2. Gallagher is a former employee of the Township. Certification of Vincent P. Trovini ("Trovini Certif."), Exh. A, Deposition of Michael Gallagher ("Gallagher T") 121-25. During his tenure with the Township, Gallagher was a computer and network administrator, responsible for overseeing technology computer servicing for the Township.  Id.

On June 27, 2000, after a secret bid, competitive contracting process in accordance with N.J.S.A. 40A:11-4, the Township Council awarded a contract to Plaintiff for the purchase of town management software. Certification of Ted Del Guercio ("Guercio Certif."), Exh. B, June 27, 2000 Resolution.  The June 27th resolution authorized the Mayor and the Township Clerk to enter into such a contract with Plaintiff.  Id.  The software would allow various Township departments to process and track their workloads and report activity associated with their respective functions to the State of New Jersey.  Gallagher T 44:1-9. Pursuant to the agreement, the software licenses were to be used primarily by the Township's planning, zoning and building departments.  Gallagher T 42:13-25. Test licenses were also purchased for the Township's health department, the Township clerk, and the fire prevention department.  Gallagher T 42:13-25. Gallagher, however, indicated in an email that the test licenses were never used.  Guercio Certif., Exh. C, June 8, 2004 email.

The agreement also provided that the Township would purchase a fixed number of licenses that authorized Township employees to use Plaintiff's GeoTMS software. Gallagher T 44:19-45:25. These licenses were not allotted to specific individuals in the various departments.  Id.  Rather, a fixed number of licenses were purchased for each

2

department and any user authorized to use the GeoTMS software could do so, provided that the number of users using the software at any given time did not exceed the number of licenses allotted to that department. Id. As the need arose, more fixed licenses were purchased by the Township, pursuant to the agreement. Gallagher T 48:14-17. All purchases, the Township asserts, were made in accordance with the Local Public Contracts Law by formal resolution of the Township Council, as memorialized in Resolutions No. 04-158 and 01-083. Guercio Certif., Exh. D and G, Township Resolutions No. 04-158 and No. 01-083.

Sometime in 2003, the Township, realizing that it may have a need for additional licenses, inquired as to the possibility of amending its agreement with Plaintiff. Gallagher T 48:17-51:2. The terms of the amendment were to be as follows: The Township would have access to additional licenses for each department and in return, Plaintiff would receive a percentage of fees received by the Township generated from processing zoning, planning, and building applications and permits with the software. Id. Essentially, the amended agreement would provide the Township with an additional number of licenses at the cost of 5% of the fees generated by the use of the software. Gallagher T 51:10-16. On October 17, 2003, Gallagher signed an amendment to the original agreement, effectively changing the fixed licensing arrangement to the fee based arrangement discussed by the parties. Gallagher T 77:4-18; Guercio Certif., Exh. H, October Amendment. The amendment provided that the Township would have an unlimited number of licenses to Plaintiff's GeoTMS software, removed yearly maintenance charges called for under the original agreement, and changed the method of billing, in which Plaintiff was owed 5% of fees generated using the software. Defendants assert that no Township Council Resolution or

3

Ordinance formally authorized such an amendment to the original agreement. Further, Defendants contend that Gallagher was not authorized to enter into such an agreement on the Township's behalf.

However, Plaintiff argues that Ordinance No. 3392, passed on August 12, 2003 by the Township Council, was done so for the specific purpose of increasing municipal permit fees so that a portion of those increased revenues could be used to pay for the new fee arrangement outlined in the amendment to the original agreement. See Guercio Certif., Exh. N, Ordinance No. 3392.  In support, Plaintiff relies on: (1) Gallagher's representation to one of its representatives, Mark Durfee, that Ordinance No. 3392 increased the Township's building permit fees to fund the 5% due to Plaintiff under the amendment; and (2) Vincept Lupo, Construction Official and Director of Community Development for the Township, who testified at his deposition that it was his understanding that Ordinance No. 3392 was enacted in order to cover the additional fees due to Plaintiff under the amendment. Trovini Certif., Exh. D, Deposition of Vincent Lupo ("Lupo T") 31-32.[1]

Gallagher re-executed another copy of the October 13th amendment on December 18, 2003. Plaintiff contends that the Township never informed Gallagher that he was not authorized to execute contracts. To the contrary, Plaintiff asserts that Gallagher was advised by the Township Chief Financial Officer, Marc Dashield and the Township Manager, Kenneth Daly, to re-execute the amendment to the original agreement. See Gallagher T 93:14-96:2. However, Gallagher also admitted during his deposition testimony that he "had proceeded incorrectly. . .[and] [I] don't know why I went ahead and signed [the

---

[1] Lupo also testified during his deposition that the Ordinance was passed to cover the Department's budget and not necessarily the specific amended agreement between the parties. Lupo T 74:8-20.

amendment]." Gallagher T 116:1-7.  Daly, too, confirmed that Gallagher's responsibilities did not extend to the authorization of contracts or amendments thereto beyond a certain dollar amount.[11]  Specifically, Daly testified that Gallagher's responsibilities were to "plan and manage . . .make recommendations, to [Daly] and the Township Council, in terms of the hard, you know, the hardware systems that we should have and, you know, all his recommendations, if they involved budget, they had to be put in the budget and the budget had to be approved by the Council." Guercio Certif., Exh. J, T 25:4-11.  With respect to Daly's order to Gallagher to proceed with re-executing the amendment, Defendants point to the email offered by Plaintiff as stating only that there were discussions about altering the original agreement and no discussion of Gallagher unilaterally re-executing the amendment.  See Guercio Certif., Exh. G, December 12, 2003 Email.

After Gallagher's re-execution of the amendment, the Township informed Gallagher it was not ready to proceed with the changes to the original agreement.  On February 3, 2004, Plaintiff sent Gallagher a license configuration file containing the additional licenses under the amendment to the original agreement.  Defendants proffer that the licenses were never installed beyond the central network and never rendered usable for other workers.  At this point, sometime during the first or second week of February 2004, Daly, Dashield, and Gallagher held a teleconference with Plaintiff's representatives Durfee and Dorian DesLauriers to inform them that although Gallagher was not authorized to execute an amendment to the original agreement, the Township was still interested in pursuing a structural change to its billing arrangement under the original agreement, but that such a change would need to go before the Council.  Exh. A, T 119-120.  Gallagher testified that

---

[11]That amount, Daly indicated, was any contract or agreement under $8,500, which still required Daly's authorization before Gallagher could proceed.

Plaintiff's representatives, although not particularly enthused by this revelation, were "eventually amenable." Id.

In order for the parties to revert back to the terms of the original agreement, Plaintiff e-mailed Gallagher on March 29, 2004 an executable program that would permit the Township to reset the number of licenses it was authorized to use. Trovini Certif., Exh. C., Deposition of Mark Durfee ("Durfee T") 61:3-63:3. The program would remove the twenty additional licenses sent to Gallagher on February 3, 2004. Gallagher admits that he never ran the program, leaving the additional licenses installed on the Township's central computer system. Gallagher T 143:5-144-7. It was not until April 2005 that Plaintiff discovered during routine testing and maintenance that the Township had never removed the additional licenses. Durfee T 72:3-73:12.

Plaintiff initiated this action in United States District Court for the new District of New Jersey on February 28, 2006. Plaintiff's Complaint alleges breach of contract, or alternatively, that Defendants were unjustly enriched when they retained the additional software licenses without compensating Plaintiff. On June 26, 2006, Defendants filed an Answer thereto. This case was then reassigned to this Court from the Honorable Stanley R. Chesler, U.S.D.J, on July 10, 2006. On October 15, 2008, Defendants filed the present motion for summary judgment, seeking dismissal of Plaintiff's claims. For the reasons that follow, Plaintiff's breach of contract claims are dismissed but because a genuine issue of material fact exists as to whether Defendants retained and used the additional licenses, Plaintiff may proceed with unjust enrichment claims.

## II. DISCUSSION

### A.  Standard of Review

6

Summary judgment is appropriate where the Court is satisfied "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. Celotex, 477 U.S. at 330. Once the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex, 477 U.S. at 324. In other words, the non-moving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999). A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248. In evaluating the evidence, a court must "view the inferences to be drawn from the underlying facts in the light most favorable to the [non-moving] party." Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002) (citations omitted).

**B. Local Public Contracts Law and Approval of the Amendment**

7

Plaintiff contends that Gallagher's execution of two signed amendments to the original agreement, actions taken with the knowledge of Gallagher's superiors, created a binding and enforceable contract amendment in accordance with the Local Public Contracts Law ("LPCL"), N.J.S.A. 40A:11-1 et seq. In response, Defendants assert Gallagher was never authorized to sign off on such amendments and that Gallagher's supervisors merely intended for Gallagher to conduct negotiations with Plaintiff's representatives. Moreover, Defendants challenge Plaintiff's assertion that Ordinance No. 3392 was official action taken by the Township Council that ratified the amendment to the original agreement. In support, Defendants primarily rely on the LPCL, which states, in pertinent part:

> Every contract awarded by the contracting agent for the provision or performance of any goods or services, the cost of which in the aggregate exceeds the bid threshold, shall be awarded only by resolution of the governing body of the contracting unit to the lowest responsible bidder after public advertising for bids and bidding therefor, except as is provided otherwise in this act or specifically by any other law . The governing body of a contracting unit may, by resolution approved by a majority of the governing body and subject to subsections b. and c. of this section, disqualify a bidder who would otherwise be determined to be the lowest responsible bidder, if the governing body finds that it has had prior negative experience with the bidder.

N.J.S.A. 40A:11-1.

At the outset, the Court notes that the LPCL, N.J.S.A. 40A:11-1 et seq., "seeks to protect public funds by ensuring that money is spent in an efficient manner, by those properly authorized to spend it." Saint Barnabas Med. Ctr. v. County of Essex, 111 N.J. 67, 77 (1988). Without such vigorous approval procedures, the public would be deprived of an opportunity to scrutinize the use of public money and government entities would not be tempered by accountability to the voting public. Importantly, "the law presumes that public contractors operate with knowledge of relevant laws constraining the procedural and

8

substantive discretion and authority of officials with whom they deal." Id.; see also Borough of Wanaque Sewerage Authority v. West Milford, 144 N.J. 564, 574-75 (1996); State v. Erie R.R. Co., 23 N.J. Misc. 203 (N.J.Super. Ct. 1945). In applying the law, New Jersey courts have embraced a clear cut rule, that contracts not explicitly authorized by the requisite governmental mechanisms set forth in the LPCL are unenforceable.

That is not to say, however, that an unauthorized act taken on behalf of a municipality cannot later be ratified through appropriate means. "Ratification by a municipality, express or implied, must be demonstrated by actions that fully comply with all the statutory precedents." Maltese v. Township of North Brunswick, 353 N.J.Super. 226, 246 (App. Div. 2002). In Casamasino v. City of Jersey City, the New Jersey Supreme Court articulated how a municipality may properly ratify an irregular public contract:

> [T]he subsequent passage of an "ordinance directing payment of a just claim previously incurred by a municipality constitutes effective ratification to bind the municipality as though the obligation had been first properly authorized." De Muro v. Martini, 1 N.J. 516, 522, 64 A.2d 351 (1949). Two years later, this Court reaffirmed the principle that a contract formed without compliance with statutory conditions precedent may not be validated simply by performance. Bauer v. City of Newark, 7 N.J. 426, 434, 81 A.2d 727 (1951). A contract that did not comply with all statutory conditions precedent can be "ratified only by full compliance with the statutory prerequisites ... in the first instance." Id. at 435, 81 A.2d 727. The pertinent principle derived from the foregoing cases that is applicable to the present case is that ratification of irregular contracts for goods or services is permitted only after full compliance with all statutory conditions precedent. That essentially means express, rather than implied, ratification.

158 N.J. 333, 345 (1999). With respect to implicit ratification, a court may find that a municipality has ratified an otherwise invalid contract if "the conduct of [municipality] manifests an intention to affirm the unauthorized act of its agent." Johnson v. Hospital Services of N.J., 25 N.J. 134, 140-41 (1957). Acquiescence, or similarly a failure to

repudiate unauthorized conduct, may suffice. Id. at 141 (citing Restatement (First) of Agency § 94 (1933)). That being said, in determining whether a municipality has ratified an unauthorized act implicitly, the court must be satisfied that the municipal officials were fully aware of the material facts. Id. (quoting Board of Education of Asbury Park v. Hoek, 38 N.J. 213, 241 (1962)).

In the instant matter, no ordinance or official action taken by the Township Council explicitly authorizes the execution of an amendment to the original agreement. Moreover, Plaintiff concedes that Gallagher did not have official authority to execute an amendment to a public contract. Nevertheless, Plaintiff maintains a contract amendment was duly executed, evidenced by Ordinance No. 3392, as increasing the fees for municipal services to allegedly compensate for the adjustment to the parties' contractual agreement. As Defendants point out, Plaintiff is a sophisticated distributor and developer of township management software who would have intricate knowledge of the requirements placed on municipalities as to the authorization of public contracts. Thus, this Court must presume that Plaintiff was fully aware of the rigorous procedural steps and guidelines set forth in the LCPL that must be satisfied before a public contract can be executed. Plaintiff cannot now plead ignorance of its strictures.

The record provides no basis for this Court to infer that Ordinance No. 3392 was passed to expressly ratify the amendment to the original agreement. Indeed, the minutes from the Township Council's meeting on the day Ordinance No. 3392 was passed include no mention of Gallagher, Plaintiff, the original agreement, or town management software. Again, a party must be mindful that lawful ratification is required to create an enforceable agreement. Here, Plaintiff was obviously aware of the secretive, regimented bidding

10

process that gave it the opportunity to service the Township's town management software needs in the first place.  It only follows that Township Council approval in accordance with the LPCL, or something akin to such a process, would be required to completely overhaul the original agreement.

New Jersey courts have indicated that "[a]ny conduct on the part of the municipality reasonably evidencing approval of the unauthorized transaction will suffice." Maltese, 353 N.J.Super. at 244 (quoting Johnson, 25 N.J. at 141). In the instant case, Plaintiff has not shown that the Township Council was privy to all material facts surrounding the possible amendment to the parties' original agreement.  No testimony has been solicited from Township Council members to demonstrate that all members were aware of Gallagher's conduct and that its decision to approve fee changes was done with the intent to move forward with the proposed amendment.  Moreover, the fact that a fee increase may have been necessary to pay for the new fee arrangement as provided for in the amendment, that action, in and of itself, does not demonstrate that Ordinance No. 3392 was the Township Council's ratification of Gallagher's unauthorized conduct.  While it is true that "[c]ourts often find and enforce implied promises by interpretation of a promisor's word and conduct in light of the surrounding circumstances," and that Ordinance No. 3392 is probative in this inquiry, this Court cannot infer from this act alone that the Township Council intended to ratify Gallagher's unauthorized conduct.

In Johnson, which Plaintiff primarily relies on, the Director of the Department of Public Affairs for Newark, New Jersey directed one of his employees to enter into an arrangement with the Hospital Service Plan.  25 N.J. at 142. The Director also approved any rate increases necessary to effectuate the agreement.  Id. It was not until a decade later, in

11

1954, that the Mayor of Newark and the City Council became aware of the 1944 agreement. Id. Upon finding out about the agreement and the rate changes, the City Council chose not to revoke the arrangement. Id. In light of the City Council's decision not to abrogate the agreement, the New Jersey Supreme Court held that decision constituted implicit ratification of the Director's conduct:

> The city permitted the contract with the Hospital Service Plan to remain in effect from 1944 through 1956, although by its very terms the contract was terminable upon 60 days' notice by either party. Prominent is it that during this entire period and, in fact, from 1922 forward no one in the city administration other than the medical director had ever established rates for hospital care. Newark cannot contend its administrative officials were ignorant of the existence of the contract or the material facts concerning is execution and terms. The very officer charged by the City of Newark with the authority to negotiate such contracts knew of its consummation in 1944 and was also familiar with the rates which the Hospital Service Plan undertook to pay.

Id. at 141. Here, Gallagher never held the authority to enter into such agreements. In Johnson, the Director was clearly vested with the power to enter into such arrangements without prior approval. Additionally, unlike Johnson, the Township did not permit the amendment to remain in place for over ten years. Shortly after Gallagher's re-execution of the amendment on December 18, 2003, Plaintiff was informed by Gallagher that the Township had to approve any change to the parties' agreement and that the Township did not plan on going forward with the proposed changes.

More importantly, the Township Council took the necessary steps to ratify and approve the purchase of additional licenses on prior occasions, as evidenced by other ordinances. See Guercio Certif., Exh. D and G, Township Resolutions No. 04-158 and No. 01-083. The Court finds support in the resolutions authorizing the amendments. The language of these prior resolutions is unequivocally clear:

12

> RESOLUTION: AUTHORIZE PURCHASE UNDER STATE CONTRACT
> AND PURCHASES EXEMPT FROM BIDDING REQUIREMENTS
>
> * * *
>
> VENDOR: DES LAURIERS MUNICIPAL SOLUTIONS, INC.

Guercio Certif., Exh. D, Resolution No. 04-158.

> RESOLUTION TO AUTHORIZE PURCHASE BID THRESHOLD/OVER
> $8,500 - ANNUAL LICENSE AND MAINTENANCE FOR GEO-TMS
> PROGRAM - AN AMOUNT NOT TO EXCEED $10,512.50.
>
> * * *
>
> VENDOR: DES LAURIERS MUNICIPAL SOLUTIONS, INC.

Guercio Certif., Exh. G., Resolution No. 01-083. Viewed in that context, it can hardly be argued that the Township Council, if it sought to ratify Gallagher's amendment to the original agreement, which would incur much greater fees at the taxpayers' expense and dramatically alter the parties' existing agreement, would do so without explicit mention of the amendment or Des Lauriers in the resolution. See Sun Coast Merchandise Corp. v. Myron Corp., 393 N.J.Super. 55, 72 (App. Div. 2007) (finding course of conduct is probative in determining whether the parties properly modified the contract). Plaintiff fails to offer any reason why this transaction between the parties would be any different than their prior transactions. The only logical conclusion the Court can draw from this omission is that the Township had no intention of ratifying Gallagher's unauthorized execution of the amendment – which had not yet even occurred.

Finally, as a practical matter, Ordinance No. 3392, enacted on August 12, 2003, predates the two amendments that Gallagher executed on October 13 and December 18, 2003. Thus, in order to find that Ordinance No. 3392 implicitly ratified the amendment, the Court would have to construe the Ordinance as authorizing Gallagher to proceed with a

contractual amendment that was outside his responsibilities. That interpretation, however, is far too strained, especially in light of Gallagher's own admission that he proceeded improperly without express authorization. Again, there is nothing contained in Ordinance No. 3392 that indicates that Gallagher or any other Township official was authorized to proceed with a contractual amendment that the Township Council never reviewed and approved.

The contractual amendment at issue was not a minor adjustment either; rather, the adjustment to the parties' fee arrangement constituted a substantial increase in the amount owed by the Township for the increased use of licenses, as evidenced by Plaintiff's claim of damages for $234,000 in contractual monies owed, an amount significantly larger than the $4,600 quarterly maintenance charges owed under the original agreement. The While the inferences at this stage are to be resolved in favor of the non-movant, Plaintiff must still come forward with some evidence that raises an issue of material fact. The sole piece of evidence that Plaintiff offers is a vague resolution that was passed months before Gallagher executed the contractual amendment. That evidence cannot raise an issue of material fact in light of the parties' prior dealings and Defendants' routine adherence to the requirements of the LPCL. Thus, the Court finds that the Township Council did not properly ratify the execution of an amendment to the original agreement, either expressly or impliedly. Accordingly, Plaintiff's contract claims are dismissed.

### C. Quasi-Contract and Unjust Enrichment

In the alternative, Plaintiff contends that even if a contract was not duly executed, Plaintiff still tendered the delivery of the licenses which were subsequently used by Defendants' employees. Under the theories of quantum meruit and unjust enrichment,

14

Plaintiff seeks to recover the value of the licenses and the fees associated with their use. In support, Plaintiff provides this Court with various exhibits, including screen shots taken during routine testing and maintenance of Plaintiff's computer system that, according to Plaintiff, show Gallagher did deploy the licenses to the Township's various departments and the licenses were in use. In response, Defendants argue that Gallagher never installed the licenses beyond the central network and the screen shots were either taken before the licenses could have been installed or that the number of licenses shown in the screen shots did not exceed the number the Township held before the amendment was allegedly executed.

Quasi-contract is a misnomer, because, as a matter of law, a quasi-contract is not a contract at all. Instead, a quasi-contract is a judicial fiction, "wholly unlike an express or implied-in-fact contract in that it is 'imposed by the law for the purpose of bringing about justice without reference to the intention of the parties.'" Wanaque Borough, 144 N.J. at 574-75 (quoting Saint Paul Fire & Marine Insurance Company, 32 N.J. 17 (1960)). This theory allows courts to "imply a promise by defendants to pay for plaintiff's. . . work." See Womach v. Thomas, 486 A.2d 15, 18 (Del. Ch. 1984). However, if a valid, enforceable agreement exists between the parties, the agreement "precludes" the assertion of quasi-contract as a remedy to an aggrieved party. C.B. Snyderf Realty Co. v. National Newark & Essex Banking Co. of Newark, 14 N.J. 146, 162-63 (1953) ("Having pleaded an express contract, the plaintiff cannot without showing a rescission, recover on quasi contract. It is a well settled rule that an express contract excludes an implied one"). Here, the Court has held that no contract existed between the parties. Accordingly, the Court will consider whether Plaintiff's unjust enrichment and quantum meruit claims survive as a matter of

15

law.  See Power-Matics, Inc. v. Ligotti, 79 N.J. Super. 294, 304-05 (App. Div. 1963) (stating that "express contract and quantum meruit may be alternatively pleaded if the prerequisite rescission has also been pleaded or is unnecessary because the alleged express contract was actually void or did not exist.").  This quasi-contractual theory has been applied to municipality contracts where the court held that the underlying contract was not properly executed.  See St. Barnabas, 111 N.J. at 80.

The only issue at this stage is whether a benefit was conferred.  In other words, this Court must determine whether Defendants were in receipt of the licenses and Township employees used them in their work. Plaintiff offers screen shots of its computer system that it argues demonstrates that Defendants did indeed use the licenses.  Although Mark Durfee testified during his deposition that it was his belief that Township employees would have the benefit of the additional licenses even if they were not deployed beyond the central network, Defendants assert that the licenses were never deployed beyond the Township's central network, and thus, could not be used by its employees. Durfee T. 65:13-68:2. Defendants also counter that the January 6, 2004 screen shot was taken before the Township could have installed the licenses.  Other screen shots, Defendants further contend, merely demonstrate that four users were able to use licenses at the same time, the same number of users permitted to use the software before the amendment, something Plaintiff was aware of as early as September 18, 2003.

Nevertheless, the onus is not on Plaintiff to sufficiently prove the merits of its unjust enrichment claim at this stage.  Here, the Court is satisfied that an issue of material fact exists as to Plaintiff's unjust enrichment claims, making summary judgment inappropriate. The record is not clear as to why the additional licenses were not removed from the

16

Township's central network.  Nor does Defendants' evidence tend to show that the additional licenses captured on the screen shots were not licenses installed after February 2004.  Because Defendants cannot definitively show that Township employees were not able to access and utilize the additional licenses installed to the Township's central computer network, a material issue of fact exists as to whether Defendants retained the benefit of utilizing the software licenses after it was clear to both parties that the amended agreement  was not in place.  Thus, Defendants' Motion for Summary Judgment on Plaintiff's unjust enrichment claims is denied.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted in part and denied in part as Plaintiff may proceed with its unjust enrichment claims.


Dated June 9, 2009                                       /s/ Freda L. Wolfson
                                                         Freda L. Wolfson, U.S.D.J.